UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

KOSHAUN L. HUGHES

No. 20 CR 447

Judge Robert W. Gettleman

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### MOTION TO QUASH ARREST AND SUPPRESS EVIDENCE

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR.,
United States Attorney for the Northern District of Illinois, hereby responds to
defendant Koshaun Hughes's suppression motion (R. 22) and requests that the Court
deny the motion after a hearing. The government anticipates that its evidence at a
hearing will establish that law enforcement's search of Hughes's vehicle was lawful
and not in violation of the Fourth Amendment to the United States Constitution.

## I.    INTRODUCTION

Hughes is charged with one count of being a felon in possession of a firearm in
violation of 18 U.S.C. § 922(g)(1). R. 12. Hughes now moves to suppress the loaded
firearm seized from his vehicle—which is the basis for the charge against him—
asserting that Chicago Police officers unlawfully searched his vehicle during a traffic
stop. Hughes Mot. at 2. The motion should be denied.

On July 31, 2020, Chicago Police officers pulled over Hughes in his vehicle after
seeing Hughes commit two separate traffic violations: not wearing a seatbelt and
failing to use a turn signal. As Chicago Police officer Maria Sigartau approached
the driver's side of the vehicle, she saw Hughes reach with his right hand and place

an L-shaped item that appeared to be in the shape of a handgun on the backseat floorboard. When Officer Sigartau reached the vehicle and talked to Hughes while he was sitting in the driver's seat, Hughes appeared nervous and was moving around a lot in his seat. Officer Sigartau asked Hughes to exit the vehicle, and he complied. Officer Sigartau then asked Hughes if there was a gun in the vehicle, and Hughes admitted that there was. After Officer Sigartau handcuffed Hughes, she recovered a loaded semi-automatic pistol from the backseat floorboard.

Hughes's acknowledgement that there was a gun in the vehicle, as well as Officer Sigartau's observations of Hughes, provided probable cause to search the vehicle and recover the loaded firearm from the backseat floorboard. Accordingly, Hughes's motion should be denied following a hearing.

## II. FACTUAL BACKGROUND

The government anticipates that its evidence at the hearing will establish the following:

### A. Hughes's Traffic Stop and Arrest

On July 31, 2020, at approximately 8:00 p.m., Officer Sigartau along with Officers Maria Anaya, Filip Bieniasz, and Reginald Engram were on patrol when Officer Sigartau observed a silver Mazda 6 driving northbound on Independence Boulevard near Interstate 290 and Congress Avenue.[1] The officers were traveling

---

[1] The facts recited here are based on: (1) materials produced by the government to defendant in discovery, including CPD reports and Hughes's recorded post-arrest interview; and (2) information law enforcement officers more recently provided in

southbound on Independence Boulevard when Officer Sigartau, who was driving the police vehicle, saw through the windshield of the Mazda that the driver of the vehicle—later identified as Hughes—was not wearing his seatbelt.

Officer Sigartau made a U-turn and followed the Mazda, at which point she saw Hughes fail to use his turn signal when changing lanes. Officer Sigartau activated the police vehicle's emergency equipment in response to the observed traffic violations and curbed the Mazda near 3755 West Congress Parkway in Chicago. *See* Chicago Municipal Code § 9-76-180 (requiring drivers to wear seat belts); *id.* § 9-40-200 (requiring a turn signal when changing lanes).[2]

As Officer Sigartau approached the driver's side of the Mazda, she saw that the vehicle was missing a rear-panel window. (The rear-panel window was not just "broken," as Hughes states in his motion, but completely missing. Hughes Mot. at 2.) Through the missing window, Officer Sigartau saw Hughes reach with his right hand and place an L-shaped item that appeared to be in the shape of a handgun on the backseat floorboard. When Officer Sigartau reached the driver's side window, she asked Hughes for his driver's license, which he gave her, and observed that Hughes appeared nervous because he was moving around a lot in his seat. Officer Sigartau was concerned that Hughes might reach for the suspected weapon in the

response to the factual assertions in Hughes's suppression motion.

[2] The police vehicle that the officers were in that evening was not equipped with a dashboard camera, and the officers were not wearing body-worn cameras because their unit had not been provided with that equipment as of July 31, 2020.

back seat, so she asked Hughes to exit the vehicle.

Once outside of the vehicle, Officer Sigartau asked Hughes if there was a gun in the car. Hughes responded that there was. Officer Sigartau then handcuffed Hughes, opened the driver's side rear door of the vehicle, entered the backseat area, and recovered a loaded firearm from the backseat floorboard. Officer Sigartau did not see a zipped "Vans" fanny pack during her search of the vehicle, and contrary to Hughes's assertion, the firearm Officer Sigartau recovered from the backseat floorboard was not in a fanny pack. Hughes Mot. at 3. Officer Sigartau subsequently asked Hughes if he had a firearm owners identification (FOID) card or a concealed-carry license. When Hughes responded that he did not have either, Officer Sigartau arrested him.

An individual who stated that he was Hughes's relative was in the front passenger seat at the time of the stop. Officer Engram talked to the passenger during the stop. When Officer Engram saw that Officer Sigartau had recovered a firearm from the back seat, he asked the passenger to exit the vehicle and the passenger complied. The officers did not arrest the passenger, and they let the passenger take possession of the vehicle per Hughes's instructions. Sconizjah Jones, Hughes's girlfriend, was not present during the stop. Hughes Mot. at 2-3.[3]

---

[3] The officers did not later request any Police Observation Device (pod) camera footage because they did not use that footage as a basis for the traffic stop or search of the vehicle. In any event, the pod cameras would not have captured any audio of the traffic stop. Defense counsel later contacted the City of Chicago's Office of Emergency Management Communications to request pod camera footage of the

### B.      Hughes's Post-Arrest Interview

About 1.5 hours after his arrest, two federal agents interviewed Hughes at the 11th District police station.   The interview was audio-recorded, and the agents advised Hughes of his *Miranda* rights at the beginning of the interview.   Hughes signed an Advice of Rights and Waiver form and agreed to speak with the agents.

During the interview, Hughes said among other things that: he got pulled over by Chicago Police officers, who detained him and found a pistol in his car; the gun was in the back seat of the vehicle; he was not the only person in the car at the time of the stop, but the gun belonged to him; during the traffic stop, he "adjusted" himself and moved around while in the driver's seat because he was scared; and he purchased the gun about three years ago.   When one of the agents asked Hughes about his statements to the officers during the stop, Hughes said that when the officers asked him if there was anything illegal in the vehicle, Hughes responded that there was "weed," after which the officers went into the car and "found the pistol."[4]

## III.   ARGUMENT

There appear to be factual disputes that bear on the disposition of Hughes's motion.   Specifically, Hughes claims that Officer Sigartau did not have probable

---

traffic stop and was told that the footage had not been preserved.   Hughes Mot. at 1, n.1.

[4]   The government will provide the Court with a copy of Hughes's audio-recorded interview under separate cover.   Some parts of the interview are difficult to hear due to rustle from the microphone.

cause to search his vehicle because: (1) there is reason to doubt that Officer Sigartau saw Hughes move his right hand towards the backseat floorboard given the size and tint of the rear-panel window; (2) there is reason to doubt that Officer Sigartau saw Hughes place an L-shaped object (*i.e.,* the gun) on the backseat floorboard if the gun was inside a zipped fanny pack; and (3) the search of the vehicle began before Hughes was asked if there was a weapon in the car.   Hughes Mot. at 3-4.   Those assertions are contrary to the government's evidence and require a hearing to establish the facts that culminated in the recovery of the loaded firearm from the backseat floorboard of Hughes's vehicle.

The government anticipates that the evidence will establish that Officer Sigartau's actions were proper under the Fourth Amendment.   As set forth below, Officer Sigartau had probable cause to search the vehicle after she saw Hughes place an L-shaped object on the backseat floorboard; after she noticed that Hughes appeared nervous during the stop because he was moving around a lot in his seat; and after Hughes told her that there was a gun in the vehicle.   Officer Sigartau's arrest of Hughes also was proper after Hughes told her that he did not have a permit for the gun.

Importantly, it is undisputed that Hughes was not wearing a seatbelt while he was driving that evening and failed to use a turn signal when changing lanes and that the officers therefore had a lawful basis to stop his vehicle.   Hughes also does not challenge that his post-arrest statements to the federal agents were made after

he was advised of his *Miranda* rights and knowingly and voluntarily waived them. Accordingly, there is no need to hear evidence on those undisputed issues at the hearing.

### A. The Search of Hughes's Vehicle was Appropriate.

The search of Hughes's vehicle and the seizure of his firearm from the backseat floorboard did not violate the Fourth Amendment. The Fourth Amendment bars warrantless searches *unless* one of a few specifically established and well-delineated exceptions applies. *United States v. Williams,* 627 F.3d 247, 251 (7th Cir. 2010). In this case, the search of Hughes's vehicle was constitutional under the automobile exception and as a protective search.

### 1. Automobile Exception

*First,* the search was appropriate under the automobile exception to the warrant requirement. That exception allows law enforcement to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or evidence of a crime. *Williams*, 627 F.3d at 251; *United States v. Shaffers,* No. 17 CR 438, 2018 WL 3141825, at *4 (N.D. Ill. June 26, 2018) ("Due to an automobile's 'ready mobility' and an individual's reduced right to privacy of an automobile, searches of vehicles are reasonable when there is probable cause to believe that the search will uncover contraband or evidence of crime.") (citing *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005)). Probable cause to search exists when, "based on the known facts and circumstances, a reasonably prudent person

7

would believe that contraband or evidence of a crime will be found in the place to be searched." *Williams*, 627 F.3d at 251; *see also United States v. Calvo-Saucedo*, 409 Fed. App'x 21, 25 (7th Cir. 2011) (probable cause determination is based on the totality of the circumstances).   In other words, it exists when there is merely "a fair probability" that contraband or evidence of a crime would be found inside a vehicle. *Williams*, 627 F.3d at 251.   A probable cause finding "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime."   *Id.* at 252 (citing *United States v. Funches*, 327 F.3d 582, 587 (7th Cir. 2003)).   In determining whether probable cause exists, law enforcement officers are entitled to draw reasonable inferences based on their training and experience.   *Id.* at 251.

Here, Officer Sigartau had probable cause to search the vehicle after Hughes said that there was a firearm in the vehicle since it is illegal in Illinois to carry or possess a firearm in a vehicle except under limited circumstances.[5]   *E.g., Lee v. Price,* 463 Fed. App'x 575, 578 (7th Cir. 2011) (holding that a police officer had probable cause to search the vehicle when the driver informed the officer that there were guns in the car because it is a crime in Illinois to have access in a car to a gun that is

---

[5]   While not raised in Hughes's motion and thus forfeited, Officer Sigartau was allowed to ask Hughes whether he had a gun in the car without first advising him of his *Miranda* rights because she reasonably believed that the question was necessary to ensure her and the other officers' safety.   *See United States v. Khan,* 937 F.3d 1042, 1054 (7th Cir. 2019) (holding that officer's question if defendant was armed fell within the public-safety exception to *Miranda*).

operable unless the weapon is unloaded and secured in a case or other container); *Carr v. Jehl,* No. 13 C 6063, 2015 WL 362089, at \*\*5-7 (N.D. Ill. Jan. 28, 2015) (officers had probable cause to believe that an individual was in violation of Illinois law when they found a gun in the individual's vehicle and believed that the individual lived at a different address); 720 ILCS 5/24-1(a)(4) (prohibiting a person from knowingly carrying or possessing a firearm in any vehicle except when on his land or in his own home, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission *or* unless the firearm is (1) broken down in a non-functioning state; (2) not immediately accessible; (3) unloaded and enclosed in a case or other container; or (4) carried or possessed in accordance with a concealed-carry license).[6]

Furthermore, Hughes's acknowledgment that there was a gun in the vehicle was not the only evidence supporting probable cause. As Officer Sigartau approached the stopped vehicle, she saw Hughes place an L-shaped item that appeared to be in the shape of a handgun on the backseat floorboard. Officer Sigartau also noticed that Hughes appeared nervous and was moving around a lot in

---

[6] *See also United States v. Holmes,* No. 13 CR 65, 2013 WL 2250432, at \*\*4-5 (E.D. Mo. May 15, 2013) (police had probable cause to search defendant's vehicle when, among other things, defendant voluntarily told the police that there was a gun under a jacket between the seats of his vehicle); *United States v. Reed,* No. 17 CR 29, 2018 WL 306721, at \*3 (S.D. Ind. Jan. 5, 2018) (officers had probable cause to search a vehicle when, among other things, one of the passengers told the officers that the defendant attempted to hand the passenger a gun while in the vehicle and the passenger refused to take the gun).

the driver's seat while she questioned him. Those observations of suspicious conduct, when coupled with Hughes's statement that there was a gun in the car, gave Officer Sigartau probable cause to believe that the vehicle contained contraband or evidence of a crime, which it in fact did. *See United States v. Williams*, No. 19 CR 662, 2021 WL 25550, at *8 (N.D. Ill. Jan. 1, 2021) ("When gun possession is paired with evasive or other suspicious conduct, probable cause can be found.").

And while Hughes now claims that the search of the vehicle began before he was asked whether there was a weapon in the car (Hughes Mot. at 4), according to his recorded post-arrest interview and the interviewing agent, Hughes said that when the officers asked him if there was anything illegal in the vehicle, he responded that there was "weed" in the car, after which the officers searched the vehicle and "found the pistol." Thus, even under Hughes's stated version of the events, the officers had probable cause to search the vehicle after Hughes told them that there was illegal marijuana inside the car, particularly when taken together with Officer Sigartau's observations of Hughes as she approached the vehicle and while she talked to him at the vehicle. *E.g., United States v. Kizart*, 967 F.3d 693, 696 (7th Cir. 2020) (probable cause existed to believe the vehicle contained contraband or evidence of criminality when, among other things, driver admitted that marijuana had been smoked inside the vehicle); 410 ILCS 705/10-35(a)(2)(D) (prohibiting the possession of marijuana in a vehicle unless it "is in a reasonably secured, sealed container and reasonably inaccessible while the vehicle is moving").

10

## 2.     Protective Search

*Second,* even if the Court were to disregard what Hughes said to Officer Sigartau and when, a protective search of the passenger compartment of the vehicle was reasonable under the circumstances.   As Officer Sigartau approached the vehicle, she saw Hughes place an object that she believed was a gun on the backseat floorboard—the location from which she later recovered the loaded firearm.   Hughes also appeared nervous and was moving around a lot while being questioned (as he admitted in his post-arrest interview), causing Officer Sigartau to worry that Hughes might reach for the suspected firearm in the back seat.   Those circumstances (without even considering that Hughes admitted that there was a gun in the car prior to the search) provided Officer Sigartau with a reasonable basis to search the vehicle to ensure the officers' safety.

An officer with a reasonable suspicion that a motorist may be armed and may be able to gain immediate control of weapons may conduct a protective search of the passenger compartment of the vehicle without a warrant.   *Michigan v. Long*, 463 U.S. 1032, 1049 (1983).   Such a search must be confined to "those areas in which a weapon may be placed or hidden."   *Id.*   Unusual movements, such as Hughes's furtive movements here, may lead to a reasonable suspicion that an individual has retrieved or concealed a weapon.   Indeed, in *United States v. Arnold,* 388 F.3d 237 (7th Cir. 2004), the officer saw the defendant either retrieving or placing something in the back seat, which gave the officer "a lot of concern for what might be in the

vehicle." *Id.* at 238. The Seventh Circuit held that was sufficient to give the officer reasonable suspicion to search the car. *Id.* at 240-41. Likewise, in *United States v. Schlatter,* 411 Fed. App'x 896, 899 (7th Cir. 2011), the Seventh Circuit held that an officer had reasonable suspicion to search the car after the defendant was moving around suspiciously in the driver's seat after being stopped for speeding. A similar decision is warranted here in light of Hughes's observed movements and the presence of two individuals in the vehicle (Hughes and the passenger) who could have gained "immediate control" of the gun on the backseat floorboard. *Long,* 463 U.S. at 1049; *Shaffers,* 2018 WL 3141825 at *4 (officers' protective search of the vehicle was reasonable based on, among other things, defendant's furtive movements and the fact that at least one of the passengers had immediate access to the gun).

### B. Hughes was Lawfully Arrested.

Officer Sigartau's arrest of Hughes was lawful. After recovering the gun from the backseat floorboard, Officer Sigartau asked Hughes if he had a FOID card or concealed-carry license. Hughes's response that he did not have either provided Officer Sigartau with probable cause to arrest him for his unlawful possession of a firearm.

## IV.    CONCLUSION

For the foregoing reasons, the government respectfully requests that Hughes's

motion to suppress be denied following a hearing.

                                       Respectfully submitted,

                                       JOHN R. LAUSCH, JR.
                                       United States Attorney

                                       By: /s/ Prashant Kolluri
                                       PRASHANT KOLLURI
                                       JARED C. JODREY
                                       Assistant United States Attorneys
                                       219 South Dearborn Street, 5th Floor
                                       Chicago, Illinois 60604
                                       (312) 353-5300